```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| RICKY NEFFERDORF, | : |
| : | Civil Action |
| Plaintiff, : | No. 04-cv-3411 (NLH) |
| : |  |
| v. : | **OPINION** |
| : |  |
| CORRECTIONAL MEDICAL : |  |
| SERVICES, INC., et al., : |  |
| : |  |
| Defendants. : |  |

**APPEARANCES**:

ROSEMARY PINTO
FELDMAN & PINTO
1804 LOCUST Street, 2R
Philadelphia, PA 19103

DANIEL S. WEINSTOCK
FELDMAN, SHEPHERD, WOHLGELERNTER, TANNER & WEINSTOCK
1845 Walnut Street, 25th Floor
Philadelphia, PA 19103
*Attorneys for Plaintiff Ricky Nefferdorf*

JEFFREY M. SCOTT
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
PO BOX 3000
HADDONFIELD, NJ 08033-0968
*Attorney for Defendants CMS, William Andrade, James J. Neal, M.D., James Ruman, R.N., Rock Welch, and Abu Ahsan, M.D.*

**HILLMAN, District Judge**

In this action, Plaintiff, Ricky Nefferdorf, asserts that Defendants were negligent and deliberately indifferent to his serious medical needs by failing to diagnose and treat his hepatitis C ("HCV") while he was incarcerated. Before the Court is a Motion for Summary Judgment filed by Defendants Correctional

Medical Services, Inc., William Andrade, James J. Neal, M.D., James Ruman, R.N., Rock Welch, and Abu Ashan, M.D. (collectively, "Defendants"). For the reasons expressed below, Defendants' Motion for Summary Judgment will be granted.

## I. JURISDICTION

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983, as well as New Jersey state law. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

## II. BACKGROUND AND PROCEDURAL HISTORY

In June 1997, Plaintiff was incarcerated in the New Jersey Department of Corrections ("NJDOC") following a conviction for burglary. At that time, Plaintiff had no medical concerns beyond his history of drug and alcohol abuse. While incarcerated, Plaintiff stopped using drugs and alcohol and reported his level of health to be "very good." Plaintiff was released on parole in November 1998.

Following his release, Plaintiff violated the terms of his probation by testing positive for drugs and alcohol. He was then sent to a rehabilitation program, from which he fled in May 1999. While a fugitive, Plaintiff continued his use of alcohol and drugs and began to experience serious medical issues. Despite vomiting blood in 1999, Plaintiff did not seek medical attention

for fear of being caught by law enforcement officials.  In 2000, Plaintiff's girlfriend was treated for HCV.  At that time, Plaintiff was offered medical treatment, but he refused.

In November 2002, Plaintiff was arrested for having violated the terms of his parole.  Shortly thereafter, while being held in Atlantic County, Plaintiff was hospitalized for vomiting blood.  While hospitalized, Plaintiff was diagnosed for the first time with diabetes, cirrhosis of the liver due to alcoholism, and HCV.

In March 2003, Plaintiff was transferred to the NJDOC.  Upon his admission to the NJDOC, Plaintiff reported that he had been diagnosed with cirrhosis, HCV, and diabetes to intake personnel.  He was then immediately referred for a gastroenterology consult, testing, and counseling.  In April 2003, Plaintiff was tested for HCV and counseled with respect to the disease.  The results of the test confirmed Plaintiff's HCV status.  When he was advised of the test results Plaintiff was given additional counseling on living with HCV, liver functions, and the symptoms of liver failure.  From May 2003 through November 2003, Plaintiff received treatment for certain gastroenterological issues.  During his incarceration Plaintiff also received treatment for his depression, including a prescription for Celexia.  By September 2003, Plaintiff's depression was deemed to be controlled.

While being treated by CMS in 2003, Plaintiff was advised that he was not a candidate for HCV drug therapy treatment

3

because of his cirrhosis. Plaintiff was also advised that his history of depression was a contraindication for retroviral drug therapy. Nonetheless, Plaintiff was advised that if he stopped drinking and using drugs, he could live another ten to twenty years with stable cirrhosis.

On November 24, 2003, Plaintiff was released on parole. At that time, he was given two weeks worth of medication for his depression, and a follow-up visit was scheduled for him with a doctor. Following his release, Plaintiff resumed his abuse of alcohol and drugs. Since his release, Plaintiff has not sought any drug therapy treatment for his HCV. On July 20, 2004, Plaintiff filed the current action.

### III. **DISCUSSION**

The three count Complaint in this action alleges claims for violation of Section 1983, negligence, and medical malpractice. Defendants now move for summary judgment on both of the counts - Section 1983 and negligence - brought against them.[1]

#### A.   **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and

---

[1] A Dr. Morela is named in both the Section 1983 claim in Count I and as the sole defendant in the medical malpractice claim in Count III. The Court notes that Morela was not properly served with a summons within 120 days after the filing of the complaint with the Court as required by Fed. R. Civ. P. 4(m). Accordingly, Plaintiff's claims against Morela are hereby dismissed.

4

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and

5

affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    **B.**    **Section 1983 Claim**

In Count I of the Complaint, Plaintiff alleges that Defendants violated Section 1983 by showing deliberate indifference to his health and welfare in violation of the Eighth Amendment.  To state a claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States.  See, e.g., Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).  There is no dispute that CMS was under contract with the State to provide medical care to inmates at all times relevant to this case and that Defendants were acting under color of state law.  Accordingly, the only question is whether Plaintiff was denied a constitutional or other legal right.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners."  Estelle v. Gamble, 429 U.S.

97, 104-105 (1976).  To state a claim for violation of this Eighth Amendment right, a prisoner must show that: (1) their medical needs are serious; and (2) the defendants showed deliberate indifference to those needs.  <u>Id.</u>  Defendants argue that Plaintiff did not have a serious medical need prior to his diagnosis with HCV in 2003.  After his diagnosis, Defendants argue that Plaintiff's healthcare providers were in no way deliberately indifferent to his serious medical needs.  Accordingly, Defendants argue, they cannot be vicariously liable for the conduct of Plaintiff's healthcare providers as there is no underlying constitutional violation upon which liability could be based.  Moreover, even if there were, Defendants argue that vicarious liability does not exist under Section 1983.  The Court will first address the issue of whether Plaintiff's healthcare providers were deliberately indifferent.

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994).  A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  <u>Andrews v. Camden County</u>, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).  Even if a doctor's

7

judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  The Third Circuit has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003); see also Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White, 897 F.2d at 110; Lanzaro, 834 F.2d at 346 ("[D]eliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.'").

In this case, Plaintiff alleges that his healthcare providers, who were contracted by Defendants, were deliberately indifferent in failing to diagnose or treat him for HCV despite

8

evidence of the disease in order to save money. In support of this argument, Plaintiff asserts that his healthcare providers "plainly ignored the signs and symptoms" that he had HCV. The delay in diagnosis, Plaintiff asserts, prevented him from treating his HCV earlier, when treatment had a higher likelihood of success.

In opposition, Defendants argue that there is no constitutional duty to screen inmates for HCV. The Court agrees. In a recently decided case, this Court held that since there was no evidence presented to the Court that HCV is a potentially dangerous and easily communicable disease like Tuberculosis, there is no general constitutional duty to screen asymptomatic inmates for HCV. See Thomas v. Correctional Medical Services, Inc., No. 04-3358(NLH), slip op. at 18-21 (D.N.J. Mar. 17, 2009). Likewise, Plaintiff has not presented any evidence in this case to suggest that HCV is the type of easily communicable disease, like Tuberculosis, that requires universal screening. Accordingly, the Plaintiff's healthcare providers can only be considered deliberately indifferent to his condition if they had some knowledge of it, but refused or delayed medical treatment for non-medical reasons.

On this issue, Defendants argue that Plaintiff has not presented any medical evidence that demonstrates that he had any serious medical need prior to 2003, when he was diagnosed with

9

HCV, that his healthcare providers knew or should have known of. In the absence of such evidence, Defendants argue, there is nothing with respect to which the healthcare providers could have been deliberately indifferent. Again, the Court agrees. As set forth above, Plaintiff had no medical concerns beyond his history of drug and alcohol abuse at the time he was first incarcerated in June 1997. Further, while incarcerated, Plaintiff stopped using drugs and alcohol and reported his level of health to be "very good." After Plaintiff was released on parole in November 1998, his healthcare was no longer Defendants' responsibility. It was not until his second incarceration in March 2003 that Plaintiff's healthcare again became Defendants' responsibility, and by that time Plaintiff had already been diagnosed with HCV, as well as cirrhosis and diabetes.

In the face of these facts, Plaintiff has failed to come forward with any evidence suggesting that Plaintiff's healthcare providers were aware or should have been aware of a serious medical need by Plaintiff at any time prior to his diagnosis with HCV in 2003.[2] Therefore, the Court finds that there are no

---

[2] Plaintiff asserts in his Opposition Brief that the report of Plaintiff's expert, Bennett Cecil, M.D., showed that Plaintiff had a positive HCV antibody and hemoglobin of 7.8 in 1997. However, Dr. Cecil's report does not contain that assertion. This is not the only instance of Plaintiff's Brief containing factual assertions that are not supported by the sources cited. Plaintiff also asserted that Dr. Cecil opined that he was a candidate for HCV screening in 1997. No such opinion, however, was included in Dr. Cecil's report. Additionally, Plaintiff

genuine issues of material fact with respect to whether Plaintiff's healthcare providers were deliberately indifferent to a serious medical need of Plaintiff prior to his 2003 diagnosis with HCV.

Following his return to custody in March 2003, which was after he had been diagnosed with HCV, Defendants argue, Plaintiff immediately began receiving proactive medical care, which continued until his release from prison. Indeed, once Plaintiff advised the NJDOC that he had been diagnosed with HCV, he was immediately referred for a gastroenterology consult, testing, and counseling. In April 2003, Plaintiff was tested for HCV and counseled with respect to the disease. The results of the test confirmed Plaintiff's HCV status. When he was advised of the test results Plaintiff was given additional counseling on living with HCV, liver functions, and the symptoms of liver failure. During his incarceration Plaintiff also received treatment for certain gastroenterological issues and his depression, including a prescription for Celexia. Further, while being treated by CMS in 2003, Plaintiff was specifically advised that his cirrhosis prevented him from receiving drug therapy treatment for his HCV. Plaintiff was also advised that his history of depression was a

---

cited to the transcript of Dr. Cecil's deposition in support of a number of propositions. However, the transcript reflects that Dr. Cecil's testimony was with respect to a "Mr. Curtis" and not Plaintiff.

11

contraindication for retroviral drug therapy.

Although Plaintiff's expert, Dr. Cecil, argues that Plaintiff should have been provided with drug therapy treatment after his depression was treated, his opinion does not address the threat of any such treatment to Plaintiff's cirrhosis.  At most Dr. Cecil's opinion amounts to nothing more than the type of "mere disagreements over medical judgment" that have been held insufficient to rise to the level of deliberate indifference.  See White, 897 F.2d at 110 (3d Cir. 1990).

Thus, having determined that Defendants had no duty to screen Plaintiff for HCV and that Plaintiff failed to present any evidence sufficient to show that his healthcare providers during his two periods of incarceration were deliberately indifferent to a serious medical need of Plaintiff's either before or after his diagnosis with HCV in 2003, the Court finds that no genuine issue of material fact exists with respect to whether Plaintiff's healthcare providers were deliberately indifferent.  Accordingly, there is no underlying constitutional violation capable of supporting a claim for vicarious liability against Defendants.[3]  See Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003) (holding that entity cannot be liable for actions of one of its officers, where a jury concluded the

---

[3] Having reached this conclusion, the Court need not address the issue of whether vicarious liability is available in this case under Section 1983.

officer did not violate any constitutional right).  Therefore, the Court also finds that no genuine issue of material fact exists with respect to Count I against Defendants.[4]  Defendants' Motion for Summary Judgment is granted with respect to Count I, which is dismissed in its entirety.

### C. Negligence Claim

Plaintiff alleges in Count II of the Complaint that Defendants negligently breached their duty to formulate and implement policies to assure Plaintiff's health and welfare, employ competent healthcare providers, and properly supervise their healthcare providers.  The Court notes that Defendants seem to have confused Count II's negligence claim against them with Count III's medical malpractice claim against Morela.  Defendants seek to dismiss Plaintiff's negligence claims on the grounds that there was no physician-patient relationship between Plaintiff and any of Defendants at any time during his incarceration.  While such a consideration would be relevant to a claim for medical malpractice, the Court notes that no such claim has been brought

---

[4] Plaintiff argues that the "supervisory defendants" should be held liable for their own actions in maintaining a policy of denying treatment for HCV.  However, this argument is of no avail in light of the Court's determination that Plaintiff was not denied any treatment for his HCV to which he was entitled, irrespective of whatever policies may or may not have been in place.

against the moving Defendants.[5]  Moreover, Defendants' arguments do nothing to undermine Plaintiff's negligence claim.

Nevertheless, Plaintiff has failed to present any evidence capable of creating a genuine issue of material fact with respect to whether his diagnosis with HCV was improperly delayed or whether the treatment he received following his diagnosis was in any way inappropriate.  As noted above, Plaintiff asserts that the report of his expert, Dr. Cecil, shows that he was a candidate for HCV screening in 1997 and that Plaintiff had a positive HCV antibody and hemoglobin of 7.8 in 1997.  However, these assertions are flatly contradicted by Dr. Cecil's report, which includes no such findings.  At most, Dr. Cecil's report opines that Plaintiff should have received HCV drug therapy after his depression was controlled.  Even this opinion must be discounted, however, as it does not address the potential threat HCV drug therapy would pose to Plaintiff's cirrhosis.  Especially in light of the evidence presented by Defendants that both Plaintiff's cirrhosis and depression prevented the use of drug therapy to treat his HCV.

While Dr. Cecil's opinion may create an issue of fact, the Court cannot find that it is a genuine issue, as no reasonable jury could conclude based upon it alone in the face of such

---

[5] As noted previously, see <u>infra</u> note 1, only a Dr. Morela is alleged to have committed medical malpractice.

14

overwhelming evidence to the contrary that Plaintiff was denied treatment to which he was entitled.  See Anderson, 477 U.S. at 248 (holding that an issue is "genuine" where it is supported by such evidence that a reasonable jury could return a verdict in the nonmoving party's favor).  In light of this determination, Plaintiff cannot possibly state a viable claim for negligence.  See Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 455 (D.N.J. 1998) ("For negligence to constitute a cause of action, a plaintiff must prove three elements: a duty or obligation, a breach of that duty, and causation to the damages, i.e., the breach caused the plaintiff's injured.") (citing Prosser & Keeton on the Law of Torts 164-65 (5th ed. 1984)).

Even assuming *arguendo* that Defendants had a duty to formulate and implement policies regarding the diagnosis and treatment of HCV, employ competent healthcare providers, and properly supervise their healthcare providers, and that Defendants breached those duties, Plaintiff will be unable to demonstrate that he suffered damages as a result of that breach of duty.  Regardless of any policy Defendants may have had to prevent treatment of HCV, there is no evidence capable of creating a genuine issue of material fact with respect to whether Plaintiff was denied any treatment to which he was entitled.  Accordingly, for the reasons expressed above, the Court finds that Plaintiff cannot demonstrate causation.  Defendants' Motion

15

for Summary Judgment will therefore be granted with respect to Count II, which must be dismissed in its entirety.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.  An Order consistent with this Opinion will be entered.

Dated: April 21, 2009         s/ Noel L. Hillman
                              HON. NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey